MATTER OF M/V "CLYDEFIELD"

In FINE Proceedings

NYC-10/52.392

*Decided by Board January 31, 1963*

(1) In determining mitigation of fine under section 254(a)(2) of the Immigration and Nationality Act, the following factors, among others, are to be considered: (1) proper precautions to detain the crewmen on board; (2) cooperation with the Service after the escape of the crewmen; (3) earnest efforts of the responsible parties to locate and/or apprehend the escapees; (4) apprehension of the escapees by the responsible parties or the voluntary return of the crewmen; (5) prompt removal of the escapees by and at the expense of the responsible parties and (6) apprehension by Service officers on information of the responsible parties.

(2) In arriving at the extent of mitigation, it is the reasonableness of the precautions exercised, not necessarily their effectiveness, which is determinative.

BASIS FOR FINE: Act of 1952—Section 254(a)(2) [8 U.S.C. 1284].

This appeal is directed to an administrative penalty totaling $2,000, $1,000 as to each of the persons named above, which the District Director has ordered imposed on Sea Brokers, Inc., as owners, agents, charterers or consignees of the M/V "Clydefield." Said official charges that Pang Chui and Tse So are aliens; that they were serving as crew members aboard this vessel at the time of arrival, ante; that they were not granted conditional landing privileges insofar as the United States was concerned; and that they were not thereafter detained aboard the ship at all times. He has also found present herein no factors which, in his opinion, merit mitigation of the fines to any extent.

The basic facts of this matter are not in dispute. Pang Chui and Tse So are aliens and they were serving as crewmen aboard the ship at the time here involved. Immigration inspection was accorded the crew of this ship immediately upon its arrival from foreign and resulted in the refusal of conditional landing privileges to them and to 29 other Chinese members of the crew. Some time in the late evening hours of September 5, 1962 or the early morning hours of September 6, 1962, these two crewmen absconded from the vessel and effected illegal entry into the United States. They were not aboard the ship on the

occasion of its next foreign sailing, and insofar as the record shows they are still at large in the United States.

The foregoing establishes, and it is uncontested, that the absolute duty of detention imposed on Sea Brokers, Inc., by the statute as to these crew members was not met and, therefore, that liability to the fines has been incurred. The only issue presented for our consideration is whether mitigation of the fines is merited and, if so, to what extent. In our opinion, the District Director's refusal to authorize such relief herein was clearly erroneous.

There are many factors, and combinations thereof, to be considered in arriving at a determination as to whether mitigation is warranted under this statute, as well as the amount thereof. Examples of such factors would be:

(1) Proper precautions to detain the crewmen on board, such as— the hiring of professional guards; lifting of the detainees' papers; confining them to quarters; and having the ship constantly checked by its officers to see to the crewmen's continued detention on board.

(2) Cooperation with the Service after the escape of the crewmen, such as—furnishing the Service prompt notice of their escape; turning over their papers; and furnishing information which might be of use in apprehending them.

(3) Earnest efforts of the responsible parties to locate and/or apprehend the escapees, such as—immediately searching the ship; hiring private detectives; and posting rewards.

(4) Apprehension of the escapees by the responsible parties or the voluntary return of the crewmen.

(5) Prompt removal of the escapees by and at the expense of the responsible parties.

(6) Apprehension by Service officers: on information of the responsible parties (a) with little or no extra effort; (b) with considerable effort and/or expense.

The total amount of mitigation merited, then, would logically be the sum of all the mitigating factors present therein. In this connection, it is the reasonableness of the precautions—not necessarily their effectiveness—which is determinative. Of course, under the statute the maximum mitigation is $800.

Application of the facts of this matter in the light of the foregoing convinces us that the total penalty herein should be reduced to the extent of $1,200, $600 per crewman. Prior to this vessel's arrival, the Master wired its agents to put them on notice that professional guards would be necessary because of the make-up of his crew. At the time here involved, one professional guard was on duty at or near the head of the gangway, on an around-the-clock basis. Also, the pier guard was notified twice, once telephonically and once personally, that no

166

Chinese members of the crew were to be permitted through the gate unless they had a pass, and the names of the only four Chinese members of the crew who had passes were furnished him. In addition, one Chinese quartermaster per shift was posted at the gangway, or under shelter nearby in bad weather, to watch for any detainees leaving so that they could be prevented from doing so. Moreover, a deck officer and an apprentice were assigned to guard watch to see to it that no detainees left the ship. The ship's officers conducted periodic checks (at least five a day) of the detainees and it was one of these that revealed the absence of these crew members. It appears from the record that the escape of these two crew members was promptly reported to the Service telephonically. Their discharge books were turned over to an immigration officer who came aboard to investigate their escape. Their Hong Kong identification cards were forwarded to the appropriate British Consul.

In the light of the foregoing, we cannot agree with the District Director's conclusion that the hiring of only one professional guard to enforce the detention of 31 detained crew members is not a mitigating factor. This is not to say, however, that such might not be the case if it were the only factor present. But here we have other equivalent factors which must be taken into consideration, such as the assigning of a deck officer and an apprentice to duty to assist the professional guard; the stationing of a quartermaster at the gangway for a similar purpose; and notifying the pier guard as was done here. In our opinion, these aspects of the case coupled with the hiring of one professional guard do constitute a proper precaution meriting mitigation. When they are considered with the other factors mentioned above, then mitigation of the penalty to the extent indicated clearly is warranted.

Maximum mitigation of the penalties, to wit: down to $200 per crewman, is not warranted. As pointed out by the District Director, no apparent effort was made by the responsible parties to bring about the location and/or apprehension of the escapees. They were not confined to their quarters. Apparently, no information as to their possible whereabouts in the United States could be furnished the Service by the responsible parties. Finally, since they are still at large in the United States it is obvious that they have not been removed from this country promptly by and at the expense of the responsible parties. We will now enter an appropriate order accordingly.

ORDER: It is ordered that the decision of the District Director be modified to provide for mitigation of the penalty to the extent of $1,200, $600 per crewman, and that as so modified the decision of said official be and the same is hereby affirmed. The penalty permitted to stand is $800, $400 as to each crewman.